Mr. Chase, McCarthy, et al., Bank of America, et al., and Mr. Alioto, I see you reserve two minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor, and may it please the Court. This is a private antitrust case. It was brought under Sections 4 and 16 of the Clayton Antitrust Act. It charged violations of Section 1 of the Sherman Act. Also, by reason of the guilty pleas, we are also taking advantage of Section 5 of the Clayton Act, which allows estoppel and prima facie effect. It is our position, the Court below, granted summary judgment on the basis of impact, and I think, to some extent, I guess, on damages as well. Our submission is this, that the guilty pleas satisfy all the elements of the antitrust violation. Obviously, they show the violation itself and the extent of the violation. It also shows the market itself, particularly. It has the impact in terms of Section 7 of it, which is restitution, and that there would be no restitution in this case, in the guilty plea, because that would be handled by the civil cases, which we are. It also shows that with regard to the fines that were made, the fines were determined on the basis of what the government determined to be the overcharge, which was 0.0003. Mr. Aliota, let me just ask you. The fact that there was a guilty plea does not relieve you of your requirement to prove an injury to your particular clients, right? Don't you have to prove harm, antitrust injuries to your clients? Yes, absolutely, and of course, Your Honor. How do you do that? How do you do that in this case? Yes. It's an unusual case where you have a multidirectional impact. On some days, it could potentially benefit someone who's purchasing euros, and on other days, it would be to their detriment, right? Isn't that how this worked? Okay. In cases like this, Your Honor, the impact is determined when you buy. And if you buy, you are injured, and that is injury in fact. I don't understand. How are you, if you buy on a day, if your clients purchased euros, and they buy on a day where the dollar was inflated, not the euros, they're not injured on that day, right? Judge Malenkov, I respectfully submit that that is not anywhere near the law. The law is that a conspiracy continues from its beginning until it's disavowed. The point is, hang on, if they discounted it, if your clients bought at a deflated price, they were buying cheaper than the market would have allowed, your clients got a bargain, right? No, Your Honor. If that's true, hang on. Let's say the price should have been ten, okay? But for some reason, they fixed it. Your clients only had to pay eight. If there had not been a conspiracy, they would have paid ten. But they actually bought it at a price of eight. I know that's not a real interest rate, but indulge me in the numbers for simplicity's sake. Your clients would have been getting a discount date as a result of the conspiracy, right? No. If the price got knocked down and they paid less than what the market rate should have been, they didn't get a discount? That's not the guilty plea, Your Honor. Okay. I just asked you a hypothetical. The hypothetical- Follow my hypothetical. If they paid below what the market rate should have been, then they weren't injured, right? They got a benefit. I think that's what Judge Bianco was asking, right? No, Judge Nugent. The fix is clear in the guilty plea. It fixes the high price and it fixes the low price. It fixes both the bid and the ask. And in either way, you either pay more than you should have or you're paid less. Under no circumstances can you ever gain or benefit anything. You are in the fixed market, just as the judge in Connecticut noted. The whole thing was rigged. So if it goes up, both go up and the other goes down. They fixed this vacuum. And so in all due respect to the judge below, there is no such thing as any conspiracy that is episodic or directional. It is a conspiracy and when it begins, it doesn't end. I understand the episodic part, but I understand why a conspiracy can't be directional, where on some days a person may benefit from the manipulation and on other days they may not. I don't understand why that's impossible. Why is that factually impossible? Judge Bianco. That's exactly what was going on here. They fixed the spread, Your Honor. It's not one price. They fixed both. It's in the guilty plea. They fixed the high price and they fixed the low price. If you buy, you're paying more. Let me just ask you a basic question. I'm going to try to follow up on Judge Nardini's question. On certain days, as a result of the market manipulation, people purchasing euros benefited on certain days from the manipulation. Yes or no? No. Never? Never. Not any day? Can't do it. Can't do it? All right. The market is rigged and the conspiracy continues. And they have fixed every price in that conspiracy, whether it be the high price to buy or the low price to sell. Let me ask you a question. Where exactly in the plea agreement does the department- That's in the- No, no, let me finish. How do you know what I'm asking if I haven't finished the question? Sorry. So where exactly in the plea agreement does the Department of Justice allege that the defendants manipulated the relevant FX benchmark, now listen carefully, rates every day during the relevant conspiracy? The guilty plea, Your Honor, under the factual basis, which is usually page three of it- What page are you referring to? Of the guilty plea? Yes, the plea agreement. Yes, of the guilty plea agreement. That's what we have, the plea agreement. Okay. Every day. Where does the Department of Justice allege that they fixed the rates every day during the relevant conspiracy? Your Honor, they charged a conspiracy and they gave the specific time period on page three of during the time period of December 2007 through to January 2013. And that is the time period of the conspiracy. But they don't allege that it was done every day, correct?  They don't allege that the rates were fixed every day, do they? Yes, it's a conspiracy. And the conspiracy was to fix the prices both ascending and descending. And it was to eliminate competition in the whole market. And every single day. The Supreme Court decisions are clear.  Hang on a minute. I think there are two different concepts there. One concept is how long does a conspiracy last? And I think the answer is generally as long as the agreement lasts, right? No, Your Honor. Hang on. If I enter into a conspiracy with my fellow criminals to rob banks, and I rob a bank once a month, and we agree to do this for six years. The conspiracy lasts six years. But that doesn't mean that every day, every moment of every day, we're robbing banks. So I guess the question is, just because there's a plea agreement stating that a conspiracy existed for a period of time, does not indicate that the misconduct, which was the object, or the actus reus, or the overt acts, whatever you want to call them of the conspiracy, continually occurred during every minute of a conspiracy. You would agree conceptually those are two different concepts, right? And how long a conspiracy lasts, right? No, Your Honor. So tell me then why in my bank robbery example I'm wrong. Okay. Everyone at every minute of six years is robbing a bank at every moment. Is that what you're saying? Yes. You are saying that? Hang on. You're saying that if the bank robber conspiracy exists for six years, every day I'm robbing a bank? No, those are the overt acts to continue the conspiracy. So tell me how that translates here. Hang on. Where they enter an agreement over a certain period of time, we're going to fix exchange rates. How does that necessarily imply that every day they are fixing the rates? How does one necessarily flow from the other? Okay. The Supreme Court has made it clear that the conspiracy continues every day until. Hang on. That's what it says. Okay. I was just distinguishing between two concepts. One is how long a conspiracy exists. And the second concept is at what moments are the conspirators doing things to effectuate the conspiracy? And you agree with me those are two different concepts, right? Yes, but the second is subservient. The overt act is in furtherance of the conspiracy which is in place. And a conspiracy does not end until one acts affirmatively and deliberately to make it known publicly that the conspiracy is over. I don't think we're asking you or debating how long the conspiracy lasted. I think we're asking the question of just because a conspiracy existed, how does that in your view show that every given moment of the day they were in fact manipulating the rates on that day? Okay. All right. If it pleases your honor. The conspiracy is done and they fixed the price on both the high side and the low side, okay? That continues. Every once in a while they may change it. But when they change it, an overt act, it will be something in furtherance as the guilty plea says. It will be in furtherance of the conspiracy which is in place. In order to disavow it, they made everybody, well, the law is clear. You have to disavow it. We have the old decision by Justice Scalia. We have the Ciccone Vacuum case. It's very clear that once you start a conspiracy, that's it. You're completely overlooking the issue of harm. That's an injury. You can have a conspiracy and still not have proof that someone was injured at a particular time, at a particular day, where you have, and I disagree with this, a multi-directional impact as a result of the conspiracy. But I think your time is up. Let's hear from the high side. But if I might just end by saying, Your Honor, that under the law, when you buy, you are injured in fact. That's the law. All right, you can cover it in your two minutes of rebuttal. Thank you very much, Your Honor. All right, we'll hear from Ms. Owen. Good morning, Your Honors, and may it please the court. My name is Tansy Owen, and I represent JPMorgan in this matter, but will be speaking on behalf of all of FLEs today. I think Judge Nardini's bank robbery example really hit the nail on the head here. There's a distinction between a conspiracy and the acts in furtherance of that conspiracy. Now, let me first start with plaintiff's notion that conspiracies are continuous. Yes, the Supreme Court has said that, but the acts in furtherance of that conspiracy, as Judge Kantz noted, did not happen every single day. And so if you look at the DOJ plea at paragraph 4i, page 6, it notes specifically that this conduct happened, quote, in certain instances, end quote. And that's the same as many of the other regulatory orders, the CFTC order similarly said, at certain times. Can you just give me, just so I'm looking at the right page, which page in the joint appendix you're referring to? Just so I can follow along. Of course. At JA 165, sorry, excuse me. At JA 166, paragraph 4i reads that the defendant and its co-conspirators carried out the conspiracy to eliminate competition in the purchase and And then it goes on to describe coordinating trading, refraining from trading, which explains that the defendant's conduct did not happen every day. They were not robbing a bank every single day. There was instances in which they were coordinating trades and instances in which they were doing nothing at all. And so Judge Bianco's statement that there's really no effort here to show any harm is exactly right. Plaintiffs had to show that on a day in which they made a purchase, it was connected to a day in which defendants actually engaged in some sort of conduct that drove the price of the euros that plaintiffs paid up. And so- And even on days where they did act, am I wrong that it was multidirectional? That it depended on the day who would be injured, or am I incorrect about that? That is exactly right. It is both episodic and it is multidirectional. And so specifically, the DOJ alleged that the conduct would sometimes increase or sometimes decrease the price of the Euro-US dollar. And that's at JA 163, paragraph 2. And that's a similar language among all the DOJ pleas. I'm just saying- So is that another way of saying that maybe on some days you would be injured if you were buying dollars, but on other days you would be injured if you were buying euros? It just depended on the day and whether they were fixing the rate that day and which direction they were doing it? It would depend which direction, exactly. And so on some days, plaintiffs might have actually benefited from defendants' conduct because- Because the plaintiffs were alleging here that they were exclusively buying euros, or am I wrong? Did they allege that sometimes they bought in either direction? So that was a little confusing. At first it started with just general foreign currency, then it shifted to euros, and then it shifted to only purchases and not also redemptions. There is evidence in the record that they did it on both ends. They both purchased euros and also did what's called redemptions, where they went back and transferred back. But either way, they'd have to show that whatever they purchased was connected to a particular conduct or trade by the defendants in the separate wholesale spot market. And so in response to plaintiffs' assertion that conspiracies are continuous, that is true under the Saucony vacuum and the Supreme Court cases, but under Atlantic Richfield, as Judge Bianco noted, you can't just rely upon the guilty plea to show all the elements of his claim. It only is relevant to whether or not there is an antitrust violation, but not the separate element of whether or not there is any injury. I have a couple of questions. There was a separate issue regarding two plaintiffs, NYPL and Rubenson, and whether or not they were also alleged in credit transactions, credit card transactions. We have to decide that issue as well, right? There's a question about that, that the issue is not actually properly before the court. Here, the court's ruling on that scoping question can be found in a June 2018 order at J.A. 1463 and an order denying reconsideration of that, which is at J.A. 1600. Neither of those opinions were appealed from. Plaintiffs do appeal from- Well, that wasn't the final order, though. They couldn't appeal from those opinions in terms of- Correct. But then in the summary judgment order, they do appeal from. They don't respond to Judge Schofield's argument that they didn't properly seek reconsideration on time. But in any event, I'm happy to address it on the merits, because it was briefed extensively and repeatedly at the district court below. First, the complaint's allegations make very clear that plaintiffs are talking about going into a retail branch in the United States and coming away with physical currency. And so if you look at the descriptions in the complaint, looking at J.A. 130, which is the Third Amendment complaint, paragraphs 60 through 66, J.A. 145 through 151, the allegations talk about walking into a retail branch in San Francisco. There's a J.P. Morgan Chase branch, a Bank of America branch, as well as a Citi branch, and purchasing physical euros, which are then scanned as exhibits to the complaint. That's Exhibit E1. And then there's also an exhibit of an expert declaration attempting to show a connection between those in-branch rates that were paid and the ECB benchmark rate that was allegedly manipulated. Now, noticeably absent from the entire complaint and any of the three complaints that preceded that complaint is any mention of credit cards, debit cards, ATM cards, or wire transfers. And there's similarly no expert analysis connecting those rates to the allegedly manipulated WMR and ECB benchmark rates. Let me just ask you a separate question. I don't know if you're aware there was a case argued on April 30th, which seems to have the same issue. It's called Santera v. UBS. Yes, Your Honor. That was before Judge Cronin. Before? Judge Cronin. Judge Schofield did not adjudicate that one. If you're familiar with that case, it seems to me, it was on a motion to dismiss, but it seems to me that at least the core issue here is the same as in that case where there's an argument about a multidirectional antitrust conspiracy, and it was dismissed in part on the idea that without allegations that make it plausible that the manipulation occurred on those days that the plaintiffs, this is LIBOR, purchased in a direction that would harm it, they can't plead a plausible claim of injury, and they cite, I'm looking at the briefs now, they cite total gas, which you rely on here as well. So isn't that the same basic legal issue we have here or not? Correct. Yes, inherit total gas, they made the same point, which we said in our briefs, that they failed to show a distinct injury by tying what the purchase was made by the plaintiffs to the alleged conduct in defendant's spot market. And just to be clear, there were many, besides this airport action, there were many other civil actions filed shortly after the DOJ pleas, alleging antitrust claims arising out of that conduct. Many of those cases were resolved, were litigated before Judge Schofield below, and settled for quite literally to the tune of billions of dollars. And so this case is just one of a much larger suite of cases in which many plaintiffs who alleged conduct with a much stronger nexus to the alleged conduct in the DOJ plea in the spot market did recover significant amounts in settlements and restitution as Mr. Eliota referred to. But this case is the one that was ultimately disposed of because there was a failure, an utter failure to show any injury by plaintiffs in this action because the conduct that plaintiffs allegedly engaged in, walking into retail branches, was way too far removed from the alleged conduct in the separate wholesale spot. Can I go back to the question that Judge Bianco was asking? Because typically if we have an earlier case pending before this court that presents an issue, the later panel will wait for the first one to decide it. So I think one question here is whether we would be in a line, basically waiting for Sonterra to get decided or not, which would depend on whether, in part, whether the only way to resolve this case would be to wait for that decision on the multidirectional price-fixing argument. Is there, in your view, a basis for ruling in this case, I guess in your favor, from your standpoint, that would not involve waiting for Sonterra to weigh in on the multidirectional pricing issue? Yes, Your Honor, because that was a case on a motion to dismiss. Unlike this case, which was a summary judgment case where we had the benefit of full discovery and plaintiffs were given defendant's trading data, they were given chat histories, they were given a wealth of evidence and a very robust record, none of which they used to show whether or not there was actually injury. Would that potentially mean that, in your view, you could win on the ground that there was simply no proof on the particular trading days that the plaintiffs engaged in their trades, there was no price-fixing that day, or would that necessarily depend on the multidirectional nature of the price-fixing conspiracy? It is not necessarily contingent on the multidirectional price-fixing, whether it went upwards or downwards, because there is simply no connection at all to the fact of whether or not there was even any conduct on that day. All right. I have another procedural question. If we decide in your favor on the summary judgment with respect to the claims, I think you had this in your brief, but I just want to confirm it's your position that we don't need to address the denial of class certification. Is that accurate? That is correct, Your Honor. All right. Thank you. Unless this Court has any further questions, I'm happy to rest. Thank you. Mr. Aliotta, you have two minutes in rebuttal. Thank you, Your Honor. May it please the Court. First, with regard to the two people that were excluded, they bought, but they bought with credit cards, and our allegation is purchasers, and we didn't say credit cards or debit cards or anything else. Purchasers have a specific meaning, and purchasers are those who exchange with money or its equivalent. What about the filings where- Pardon me? What about the other filings they point to where there was specific reference to this being only purchases, that the claims here involved only purchases at local banks? Why shouldn't that, why shouldn't it be bound by that if there's- All of that was added by the District Court. She added physical payments only, and she added it because these folks said, our prior complaint said physical, and it did not. Wait, hold on a second. You told the District Court when there was a stay, a motion to stay the action because of settlements in a related case, there was a filing that said to the District Court that the members of their class take physical delivery of foreign currency in transactions about the immediate delivery of the foreign currency at their local banks. So if you say take physical delivery at their local banks- That's not the allegation. That's what the judge said after the defendants asked her to do that. In the case, it's just purchasers, and she said, but you didn't mention credit cards. Okay, we'll amend the complaint. She says, no. No, I'm quoting from something you filed with the District Court. That's not what the District Court said. That's what was said in the filing for the District Court. What we said in the District Court is purchasers. The judge says we're quibbling with purchasers. We're not. We are entitled to purchases that are done with a credit card, Your Honor. Certainly, we include the others. I want to just read very briefly, if I might, the difference between an overt act, Judge Nardini, and the conspiracy itself. The conspiracy has already set illegal prices, both high and low. If you buy high, you pay more. If you sell low, you sell for less than what it's worth. It's already fixed. From time to time, they will have actions that are in furtherance of it, like conversations. That's where the judge confused the near-daily conversations as being near-daily conspiracy. Unfortunately, she just misread it. I read from the Supreme Court's decisions under Ciccone Vacuum that the action is renewed each day. So, a conspiracy thus continued is, in effect, renewed during each day of its continuance, and you must have it disavowed. That's the Supreme Court. That is and has been the law. And these defendants knew it because they referred to themselves as the cartel or the mafia. And you can say, maybe, that some days the mafia or the cartel doesn't do anything. But it still exists, and you are in a rigged market. All right. Let me just ask you the same two procedural-type questions that I asked Ms. Whelan. I don't know if you're familiar with this Sunterra v. UBS case. Are you familiar with that case that I asked her about that has the same issue or not? I'm really sorry, Your Honor. I didn't hear you. I said are you familiar with that Sunterra case that's pending before another panel of the court, Sunterra v. UBS? Are you familiar with that case or not? No, I'm not familiar with that case, Your Honor. That's fine. And then you agree that if we were to rule in their favor on the summary, if we believe they were correct on the grant of summary judgment, that we would not then need to address the denial of class certification? Do you agree with that? No, I believe you should address both of them, Your Honor. Why would we address that? If we determine that the named plaintiffs have no claims, on what grounds would we then address a denial of class certification? Because nobody in the case that we think has any claims, right? Because the class makes definitions and the judge, in our opinion, went astray and used it in the violation incorrectly. And so she came up with the notion of the so-called episodic and multidirectional. But even if she was wrong, if we determine that these particular plaintiffs, these named plaintiffs have no claims, why would we address that? Your Honor, I think there's a misunderstanding that it's clear that the violation was to fix the spread, both the high and the low. That was the violation, it said so. Counsel, one of us interrupts you. You have to stop talking. I'm sorry, Judge Stantini, I have an issue. I think the question is, if there are no class representatives, why would we rule on class certification? I respectfully would not accept that. You would not accept the premise? Let me ask you in a hypothetical case that's not yours. If there's no class representative left, does a court rule on class certification? Well, if there's no representative, there is no representative. But the only people left on the restitution is our case. It's not what counsel said. She's talking about a traitor case. It has nothing to do with victims. We personally were there in Connecticut court, and Judge Underhill said, okay, I think that we'll do the class action in New York, and so that's what we did. All right. Thank you both for your decision. Thank you very much, Your Honor.